### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| PHILLIP DOYLE, )<br>)<br>　　　Plaintiff, )<br>)<br>　　v. )<br>)<br>COUNTY OF PEORIA-Juvenile )<br>Detention Center, )<br>)<br>　　　Defendant. ) | Case No. 05-1131 |

## **O R D E R**

This matter is now before the Court on Defendant's Motion to Dismiss [#7] under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), 12(b)(6), and 12(b)(7). For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED, but Plaintiff is given leave to refile an Amended Complaint.

### BACKGROUND

Plaintiff, Phillip Doyle ("Doyle"), filed a Complaint against his alleged former employer, the County of Peoria-Juvenile Detention Center, claiming that Peoria County disciplined him three times between August 3, 2004 and January 21, 2005. (Pl.'s Compl. at ¶ ¶ 6-7-10.) These disciplinary actions eventually led to his termination on January 28, 2005, for violation of the Juvenile Detention Center Policy 3.1. (Pl.'s Compl. at ¶ ¶ 15-18).

Policy 3.1 states, "All employees of the [Juvenile Detention] Center, as well as consultants, contract personnel, and volunteers must maintain the confidentiality of any information pertaining to any specific juvenile." (Pl.'s Compl. at ¶ 14.) Doyle alleges that Policy 3.1 as it was applied to him violates his First and Fourteenth Amendment rights.

1

Also, he alleges that he was discharged in retaliation for filing information with the Illinois Labor Relations Board as part of an unfair labor practice charge and for releasing information on a matter of public concern to a television reporter. Specifically, Doyle released confidential information to a CBS investigative reporter about alleged physical abuse a juvenile suffered at the Detention Center, which Doyle had also reported to his superiors. (Pl.'s Compl. ¶ ¶ 16-19, 31,33-34). Subsequently, Doyle filed an unfair labor practice charge with the Illinois Labor Relations Board and released this same information.

The County filed a Motion to Dismiss alleging insufficiency of service of process and lack of personal jurisdiction under Rules 12(b)(2) and 12(b)(5), failure to state a claim upon which relief may be granted under Rule 12(b)(6), and failure to join a Rule 19 party under Rule 12(b)(7) of the Federal Rules of Civil Procedure. In the alternative, the County argues for a more definite statement pursuant to Rule 12(e).[1] (Def.'s Mot. to Dismiss at 1.)

## DISCUSSION

In ruling on a motion to dismiss, this court must consider all well pled facts as true and must draw all inferences in favor of the nonmoving party. Bontkowski v. First Nat. Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). A complaint will not be dismissed for failure to state a claim "unless it appears beyond doubt that a plaintiff can prove no set of facts" that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Chaney v. Suburban Bus Div., 52 F.3d 623, 627 (7th Cir. 1995).

---

[1] The County of Peoria cites Rule 12(f) in support of its Motion for a More Definite Statement, but it obviously means to cite Rule 12(e), which is the rule for a More Definite Statement. Rule 12(f) is a Motion to Strike.

2

## I. Dismissal for Failure to Join a Rule 19 Party

Rule 12(b)(7) allows a party to move to dismiss a complaint if the complainant fails to join a party required under Rule 19. Fed. R. Civ. P. 12(b)(7); Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1609 (2001). Here, the County argues that the Chief Judge of the Tenth Judicial Circuit should been joined under Rule 19 and, because they were not, Doyle's case should be dismissed. Rule 19(a), in relevant part, sets forth those parties that should be joined if feasible:

> A person subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties . . . .

Fed. R. Civ. P. 19(a).

The Illinois Probation and Probation Officers Act, 730 ILCS 110/0.01 *et. seq.* (2004), states that officers at the juvenile detention center are employees of the Chief Judge of the Circuit in which they work. Id. at 110/13 ("It shall be the duty of the director of the court services department or the chief probation officer, appointed as provided in this act, to supervise and control the work of all subordinate court services or probation officers under his or her jurisdiction subject to the general administrative and supervisory authority of the Chief Circuit Judge ...."). *See also*, ILCS 405/6-1 ("The chief judge of each circuit shall make provision for probation services for each county in his or her circuit.") Juvenile probation officers are generally considered employees of the state by courts in the Seventh Circuit. *See, e.g.,* Zupan v. State of Illinois, 1999 WL 281344 (N.D. Ill. 1999) (unpublished opinion). Additionally, Doyle does not contest that the Chief Judge had the ultimate authority to hire, fire, or discipline him. Thus, it is clear that Doyle was employed by the

Chief Judge of the Tenth Judicial Circuit, and therefore complete relief cannot be afforded to Doyle unless the Chief Judge is a defendant in this lawsuit. Accordingly, Doyle's Complaint is dismissed without prejudice to refiling. If Doyle chooses to refile, the Chief Judge of the Tenth Circuit in his official capacity must be added as a party.

The court notes that the above ruling is not meant to suggest that the County cannot be a party in an amended complaint. However, the only feasible argument that Doyle could make with respect to the County would be akin to the argument that the County was a joint employer with the Chief Judge in his official capacity. The Seventh Circuit has previously held that where an employee is employed by the Chief Judge of a judicial circuit in Illinois, but is paid by the County where the court is located, a county may be considered a joint employer. Robinson v. Sappington, 351 F.3d 317, 339 (7th Cir. 2003). The question of whether a joint employer relationship exists is a fact-based inquiry that involves the weighing of several factors, of which the ability to control job functions and results is the must important. Alexander v. Rush North Shore Medical Center, 101 F.3d 487 (7th Cir. 1997). Of the factors to consider, it is well-settled that "the employer's right to control is the most important," as an employer/employee relationship is likely to exist where "an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved." *See* id. at 493. Thus, a determination regarding whether the County is a proper defendant must necessarily await a more developed factual record.

## II.  Service of Process

Rule 4(j)(2) of the Federal Rules of Civil Procedure provides as follows:

> Service upon a state, municipal corporation or other governmental

4

> organization subject to suit shall be effected by delivering a copy of the summons and of the complaint to its chief executive officer or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons . . . .

Fed. R. Civ. P. 4(j)(2). The Illinois Code of Civil Procedure further provides, "Service on public, municipal, governmental and quasi-municipal, governmental or quasi-municipal corporations, summons may be served by leaving a copy with the chairperson of the county board or county clerk in the case of a county . . . ." 735 ILCS 5/2-211 (2004). Therefore, under Illinois law, the summons must be served upon the county clerk or the chairperson of the county board.

Nevertheless, the Illinois Supreme Court has held that, although strict compliance with a statute governing service of process of public entities is generally required, authority to accept service of process may be delegated. Sarkissian v. Chicago Bd. of Educ., 776 N.E.2d 195, 206 (2002). Consequently, when a public entity is required by a statute to accept service of process, the entity may delegate this task to another person. Id. But, it must be the public entity itself that has adopted an alternate means of service. Id. at 205. Nevertheless, this District has previously held that strict compliance with the Rule regarding service of process is generally required. Robbins v. Brady, 149 F.R.D. 154, 155 (C.D. Ill. 1993). In Robbins, the Court held that when suing the United States of America, a party must strictly follow the letter of the law by effecting in-hand, in-state service to the U.S. Attorney for the district rather than simply sending a copy by certified mail. Id.

Here, Doyle served "Bill Atkins, Assistant State's Attorney" rather than the county clerk or chairperson of the county board. Doyle argues that as a matter of custom Peoria County regularly allows other individuals to accept service on behalf of the County. (Pl.'s

Mem. of Law in Supp. of Pl.'s Opp'n to Def.'s Mot. to Dismiss at 2.) However, rather than relying on Doyle's assertion of Peoria County's customs regarding service of process, the Court directs Doyle to serve the correct party under the letter of the statute. Therefore, the Motion to Dismiss for lack of personal jurisdiction is granted; however, Doyle is given leave to file an amended complaint and serve the proper party.

### III. County of Peoria as Named by Plaintiff

Rule 17 of the Federal Rules of Civil Procedure states that an action will not be "dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action." Fed. R. Civ. P. 17(a). In order to determine if the party has the capacity to be sued, federal courts will look to state law. Fed. R. Civ. P. 17(b). In Illinois, an entity must have a legal existence to be sued. Jackson v. Village of Rosemont, 536 N.E.2d 720, 723 (Ill. App. Ct. 1988). Further, only the legal entity that owns a building is subject to suit — not the building itself. Jackson, 536 N.E.2d at 723.

Here, while Doyle states that he intended to sue the County of Peoria and refers to County of Peoria and Peoria County throughout his complaint, he should refer to the proper entity he is suing. Doyle contends that he is suing the correct entity because "Juvenile Detention Center" was simply added for clarity's sake. However, the addition has created confusion, not clarity. Thus, if Doyle chooses to replead to correct the deficiencies noted above, his amended complaint must reflect the legal name of all entities being sued.

### IV. Substantive Allegations in the Complaint

The County of Peoria has also attacked numerous substantive claims in the

Complaint including: whether the Juvenile Detention Center Policy 3.1 is unconstitutional because it is overly vague; whether the Juvenile Detention Center Policy is unconstitutional as applied to Doyle because he was terminated for speaking on matters of public concern; whether Doyle sufficiently alleged a retaliatory discharge for revealing confidential information; and whether Doyle was given adequate due process when his employment was terminated.

In regard to whether the Juvenile Detention Center Policy 3.1 is unconstitutionally vague, Doyle used this phrase in Count I of his Complaint. This Count alleges that the Juvenile Detention Center's Policy violated Doyle's Right to Free Speech under the First Amendment. Although the Defendant asks the Court to dismiss that Count based on the argument that it is not facially unconstitutional, a proper reading of Count I reveals that Doyle is claiming that the policy is unconstitutional not on its face, but rather, as applied to him in this case. Specifically, the Complaint states, "policy 3.1 is overly vague and unconstitutional *as it punished Plaintiff* who was acting as a citizen upon matters of public concern. . . ." (Pl.'s Compl. at ¶ 19. (emphasis added)) Although the Court agrees that Policy 3.1 is not facially unconstitutional, the Court reads the Complaint as stating an as-applied challenge only.

However, the County also argues that any as-applied constitutional challenge fails to state a claim. In order to be protected under the First Amendment, Doyle's speech must "be on a matter of public concern, and the employee's interest in expressing [him]self on this matter must not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs

through its employees.'" Waters v. Churchill, 511 U.S. 661, 668 (1994) (quoting Pickering v. Board of Educ. of Township High Sch. Dist. 205, Will County, 391 U.S. 563, 568 (1968)). The County claims that it was not necessary for Doyle to reveal any of the juveniles' actual identities in order to report the alleged abuse, and therefore it was appropriate to terminate him for violating Policy 3.1. However, there is a significant public interest in protecting minor children in state custody from abuse. The Court is not willing to find, in the context of a Motion to Dismiss, that Doyle's choice to reveal the names of specific juveniles in violation of Policy 3.1 automatically tips the scales of the Pickering balancing test in favor of the State's interest as an employer. This issue can only be appropriately addressed on a more complete evidentiary record. At this stage of the proceedings, the Court must accept all well-pled facts as true and draw all inferences in favor of the non-moving party. Bontowski v. First Nat. Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). Therefore, the Court cannot dismiss Count I, and the Motion to Dismiss relating to this Count is denied.

With respect to whether Doyle adequately alleged a retaliatory discharge for filing information with the Illinois Labor Relations Board, Doyle's Complaint is also sufficient. To succeed on a claim for retaliatory discharge in Illinois, Doyle must show that the County's actions were in violation of public policy and that there is a clear mandate for that public policy. Palmateer v. International Harvester Co., 421 N.E.2d 876, 878 (1981). The County argues that the Illinois Public Labor Relations Act does not specifically require Doyle to reveal confidential information regarding juvenile detainees, but he chose to do so voluntarily and therefore, was not terminated for filing information with the Board, but rather for revealing confidential information to them. (Def.'s Mem. of Law at 5-6.) However, the Illinois Labor Relations Board requires "a clear and complete statement of

facts supporting the alleged unfair labor practice." Ill. Admin. Code tit. 80, § 1220.20 (b)(4) (2005). Because the Court must accept as true all of the allegations in the Complaint, whether the Act required Doyle, in this instance, to reveal a juvenile's name to provide "a clear and complete statement of facts" is a question that is not appropriate to address at this stage of the proceedings. The Complaint contains sufficient allegations for Doyle to prove that he was fired in retaliation for filing an unfair labor practice charge with the Illinois Labor Relations Board. Therefore, the Motion to Dismiss is denied under this argument.

Regarding Doyle's Fourteenth Amendment Due Process claims, he has failed to allege sufficient facts that would give rise to a Due Process violation. Here, Doyle states that he "possessed a claim for entitlement in his continued employment, which is sufficient to be protected as a property interest . . ." and that the County's discipline and ultimate termination of him violated that property interest. To succeed on this procedural Due Process claim, Doyle must show that he had a property interest in his continued employment and that he was not given adequate notice or opportunity to be heard before he was terminated. Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Doyle simply alleges that he was disciplined and terminated. There is no allegation that he was denied a notice or opportunity to be heard before his termination. Simply alleging that he has a property interest in his continued employment and that the County's discipline and ultimate termination of him violated his due process rights is not enough to invoke the protections of the Due Process clause. For the above reasons, the court finds that Counts IV and V of the Complaint are insufficiently plead. However, Doyle is given the opportunity to correct the noted deficiencies in his Amended Complaint, if possible.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [# 7] is GRANTED. Plaintiff has 21 days to file an amended complaint correcting the inadequacies noted above to the extent possible.

ENTERED this 30th day of August, 2005.

>        ____/s Michael M. Mihm___
>            Michael M. Mihm
>        United States District Judge