UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| PHILLIP DOYLE )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHIEF JUDGE OF THE TENTH )<br>JUDICIAL CIRCUIT in his official )<br>Capacity, and PEORIA COUNTY )<br>)<br>Defendants. ) | Case No. 05-1131 |

## ORDER

This matter is now before the Court on a Motion for Summary Judgment by Defendant Chief Judge of the Tenth Judicial Circuit [#46] and a Motion for Summary Judgment by Defendant Peoria County [#45]. For the reasons set forth below, both Motions are GRANTED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted in the Complaint present federal questions under 42 U.S.C. § 1983 and the United States Constitution.

## BACKGROUND

Plaintiff Phillip Doyle ("Doyle") was employed by the Chief Judge of the Tenth Judicial Circuit ("Chief Judge") as a Youth Supervisor-Counselor ("YSC") at the Peoria County Juvenile Detention Center from August 2003 through January 2005. By Illinois statute, Doyle's position was that of a probation officer subject to the Illinois Probation and Probation Officers Act, 730 ILCS 100 *et seq.* As a probation officer, Doyle had a duty of confidentiality imposed by § 12 of

the Act (730 ILCS 110/12), as well as Policy 3.1 of the Peoria County Juvenile Detention Center as set out in the Detention Center's Policy & Procedure Manual. Doyle's employment as a YSC was ultimately terminated on January 28, 2005, for revealing confidential information about detainees at the Juvenile Detention Center.

In late June 2004, Doyle wrote a report to Mark Bronke ("Bronke"), the Superintendent at the Juvenile Detention Center, claiming that he had witnessed another employee assault a juvenile detainee named Ariel Y. The assault had allegedly occurred in March 2004. Bronke conducted an investigation and concluded that Doyle had fabricated the allegations against his co-worker. Doyle aggressively disputes that he fabricated any of the allegations, and states that several other co-workers and detainees corroborate his version of what occurred. Doyle was disciplined (in the form of a suspension) for having fabricated the report.

On October 13, 2004, Doyle wrote a letter to an attorney named Robin Potter, seeking help regarding his suspension. In that letter, Doyle revealed the last name of Darryl M., a juvenile detainee. On October 13 and 21, 2004, Doyle wrote letters regarding the alleged incident of assault and his discipline to Pam Zexman, a CBS news reporter. In his correspondence with Zexman, Doyle revealed the last name of Ariel Y.

On December 9, 2004, Doyle filed an unfair labor practice charge with the Illinois Labor Relations Board regarding the discipline he had received earlier in 2004. Doyle gave the Labor Board an unredacted copy of the "daily population report" for May 19, 2004, which contained confidential information regarding forty-three juvenile detainees. The report contained the full names of detainees at the Juvenile Detention Center, the date they were admitted, the offense with which they are charged, the status of any court action, and the county from which the

2

juvenile was referred. Doyle also admits that he gave copies of the same daily population report to Potter and Zexman.

Doyle does not dispute that he violated Peoria County Juvenile Detention Center Policy 3.1 when he released information to Potter, Zexman, and the Illinois Labor Relations Board, and Doyle did not obtain permission from his supervisor to reveal the confidential information to any source. Policy 3.1 provides, "All employees of the Center, as well as consultants, contract personnel, and volunteers must maintain the confidentiality of any information pertaining to any specific juvenile." Chief Judge MSJ, Ex. E, at 7.

Doyle was discharged on January 28, 2005, for releasing confidential information regarding juveniles. Specifically, a written disciplinary decision from Bronke states that Doyle violated Detention Center Policy 3.1 when he (1) disclosed confidential information regarding Aerial Y. to Pam Zexman; (2) disclosed confidential information regarding Daryl M. to Robin Potter; (3) disclosed confidential information regarding Ariel Y. and Daryl M. to the Illinois Labor Relations Board; and (4) disclosed the daily population report, bearing confidential information regarding 43 juvenile detainees, to the Illinois Labor Relations Board. Chief Judge MSJ, Ex. E, at 1. Bronke concluded that these infractions, in light of Doyle's disciplinary history, rendered termination the proper disciplinary action. *Id.* at 2.

Before he was discharged, Doyle was issued a Notice of Adverse Action, informing him of the violations with which he was charged and the evidence his employer had concerning those violations. Doyle was given an opportunity to present his side of the story in both written and oral format. He admitted the violations and was then discharged.

Doyle'e employment was covered by a collective bargaining agreement, which contained grievance procedures that could be used to challenge termination or other discipline. Doyle's

3

grievance over his discharge was denied at Step 3 by Steven Kossman, Bronke's supervisor. Doyle did not attend the March 24, 2005, hearing on the Step 3 grievance, and declined to seek arbitration or mediation pursuant to the collective bargaining agreement after receiving Kossman's Step 3 decision.

Doyle filed this action on May 2, 2005. The Amendment Complaint, brought under 42 U.S.C. § 1983 and state law, alleges that the Defendants violated Doyle's First Amendment rights because he was punished for speaking out on a matter of public concern. Doyle further alleges his discharge violated his due process rights under the Fourteenth Amendment, and amounted to retaliatory discharge under Illinois law

Earlier in this lawsuit, in considering a Motion to Dismiss, the Court ruled that the state tort count for retaliatory discharge (Count II) against the Chief Judge, who is essentially the State when sued in his official capacity, was barred by sovereign immunity. The Court also found that Doyle's claims under 42 U.S.C. § 1983 for monetary damages against the Chief Judge in his official capacity were barred by sovereign immunity. The Chief Judge remains in this case, therefore, only as to the claims under 42 U.S.C. § 1983, and only to the extent Doyle seeks relief not barred by the Eleventh Amendment, i.e., relief other than monetary damages.

The Complaint alleges that the Chief Judge and Peoria County are Doyle's "joint employers." While Peoria County states that it is a necessary party due to its "financial responsibility for the Chief Judge's employee related costs," it makes a cursory argument that it is not Doyle's employer or joint employer. *See Alexander v. Rush North Shore Medical Center*, 101 F.3d 487 (7th Cir. 1997) (The question of whether a joint employer relationship exists is a fact-based inquiry that involves consideration of several factors, of which the ability to control job functions and results is the most important). However, Peoria County has not moved for

4

summary judgment on this ground, and accordingly, the Court proceeds on the assumption that it is a joint employer, subject to liability independent of the Chief Judge.

On May 23, 2007, both the Chief Judge and Peoria County moved for Summary Judgment, arguing that they were entitled for judgment as a matter of law on all counts. Both motions are fully briefed, and this Order follows.

## STANDARD OF REVIEW

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. In other words, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material

facts." *Matsushita*, 475 U.S. at 586. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995).

## DISCUSSION

For a variety of reasons, the Defendants argue that they are entitled to summary judgment on Doyle's First Amendment, due process, and state law claims.

### I. First Amendment Claims

Counts I and III of Doyle's Complaint allege that the Defendants have punished him for speaking upon matter of public concern, in violation of his First Amendment rights. The First Amendment protects freedom of speech and expression and generally prevents the government from proscribing such activities. *RAV v. City of St. Paul, Minn*., 505 U.S. 377, 382 (1992). It is now well established that "[i]ndividuals do not relinquish their First Amendment rights to free speech by accepting employment with the government." *Cygan v. Wisconsin Dep't of Corr.*, 388 F.3d 1092, 1098 (7th Cir. 2004). Still, public employees do not have the "unfettered right" to express themselves, and courts "must give weight to the government's interest in efficient employment decisionmaking when evaluating First Amendment retaliation claims." *Id*.

### A. Was Doyle's Speech Constitutionally Protected?

In analyzing a First Amendment retaliation claim arising under § 1983, the Court must first determine whether the plaintiff's speech was constitutionally protected. *Sigsworth v. City of Aurora, Ill*., 487 F.3d 506, 509 (7th Cir. 2007); *Sullivan v. Rameriz*, 360 F.3d 692, 692 (7th Cir.

6

2004). If so, the plaintiff must establish that the speech was a substantial factor motivating his termination. *Sullivan*, 360 F.3d at 692. Then defendants may show that the plaintiff would have been fired even in the absence of the speech. *Id*.

First, then, this Court must determine whether Doyle's speech, specifically, the confidential information regarding juvenile detainees, is entitled to constitutional protection. In order to "ensure that public employee speech is afforded proper constitutional protections," the Seventh Circuit has traditionally applied the balancing test first announced in *Pickering v. Board of Education*, 391 U.S. 563 (1968) and clarified in *Connick v. Myers*, 461 U.S. 138 (1983). Under the *Connick-Pickering* test, a public employee's speech is constitutionally protected where (1) the employee spoke as a citizen on matters of public concern, and (2) the interest of the employee as a citizen in commenting upon matters of public concern outweighs the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees. *Sigsworth*, 487 F.3d at 509. The "inquiry into protected status is one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983).

A somewhat recent Supreme Court decision, *Garcetti v. Ceballos*, -- U.S. --, 126 S.Ct. 1951 (2006), has slightly altered the landscape of analysis governing when a public employee speaks as a citizen for First Amendment purposes. In *Garcetti*, a deputy district attorney brought a First Amendment claim alleging that the District Attorney's Office retaliated against him after he wrote memoranda to his supervisors alerting them to inaccuracies in an affidavit supporting a search warrant. *Id*. at 1955-56. After reviewing the Supreme Court precedent involving employee speech, including *Pickering* and *Connick*, the Court concluded that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their

7

communications from employer discipline." *Id.* at 1906. Therefore, under *Garcetti*, "the threshold inquiry is whether the employee was speaking as a citizen; only then do we inquire into the content of the speech" or balance the public and private interests. *Spielga v. Hull*, 481 F.3d 961, 965 (7th Cir. 2007); *Sigsworth*, 487 F.3d at 509-10.

### 1. *Garcetti* Analysis

Peoria County argues that because "disclosure of information is a part of Doyle's official responsibility under the law, Doyle's disclosures were speech pursuant to his official duties which clearly falls under the rule of *Garcetti*." Peoria MSJ, at 12. In response, Doyle does not address the County's "official duty" argument, but instead asserts that Policy 3.1 cannot "override" the requirements of the Illinois Labor Relations Board. The operative question, then, is whether Doyle made his statements to the private attorney, reporter, and ILRB pursuant to his official duties as a probation officer.

In *Spielga v. Hull*, 481 F.3d 961 (7th Cir. 2007), the plaintiff was a state correctional officer at the Westville Correctional Facility in Indiana. *Id.* at 962. For seven years, she worked at the prison's main gate, controlling traffic and searching vehicles for contraband. *Id.* While she was on her post, she observed two correctional officers suspiciously transferring bags between their private and state-owned vehicles. *Id.* Her immediate supervisor, who was posted at the main gate with her, dissuaded her from conducting a search of the vehicles. *Id.* The plaintiff noted the apparent breach of prison policy in her log, and later reported the incident to the prison's assistant superintendent. *Id.* at 963. Four days later, she was reassigned from the main gate to a less desirable assignment, and less desirable shift. *Id.* She filed an action under 42 U.S.C. § 1983, claiming that she was transferred in retaliation for reporting the main gate incident to the assistant superintendent. *Id.*

In making the threshold inquiry under *Garcetti*, the Seventh Circuit held that the plaintiff was speaking pursuant to her official duties – not as a citizen – when she told the assistant superintendent about the incident. *Id*. at 965-66. The court noted that while the plaintiff's "primary responsibility" was to regulate and monitor the vehicle and foot traffic through the gate, a focus on her "core job functions" would be too narrow in light of *Garcetti*, "which asked only whether an 'employee's expressions [were] made pursuant to official responsibilities.'" *Id*. at 966 (quoting *Garcetti*, 126 S.Ct. at 1961). Accordingly, when the plaintiff reported the incident she spoke as an employee, not a citizen, "because ensuring compliance with prison security policy was part of what she was employed to do." *Spielga*, 481 F.3d at 966. Significantly, the court noted that "Spielga 'acted as a government employee' when she reported the possible misconduct to her supervisor and sought clarification of a security policy she felt may have been breached. She did not make a public statement, discuss politics with a coworker, write a letter to newspapers to legislators, or otherwise speak as a citizen." *Id*.

Here, unlike *Spielga*, the speech at issue was made to serve Doyle's own ends and is not reasonably interpreted as being made "pursuant to his duties," such that the Court could make the threshold conclusion that Doyle was not speaking as a private citizen. Although it is not entirely clear from its briefing, Defendant Peoria County may be suggesting that because Doyle was always under the "duty" or "responsibility" to maintain the confidentiality of the juvenile detainees, all of the speech at issue here was made "pursuant to his duties." This argument, while creative, is not supported by *Garcetti* or Seventh Circuit cases applying it. It is clear that "duty" and "responsibility," for purposes of the *Garcetti* inquiry, refer to official job *functions*. Here, Doyle's disclosures to the press, a private attorney, and the labor board were made to serve

9

his own ends, not to fulfill any task or duties of his work as a YSC. Because *Garcetti* is inapposite to the instant facts, the Court next turns to analyzing the content of Doyle's speech.

### 2. *Connick-Pickering* Test

In determining whether speech is considered protected speech under the First Amendment, courts apply the two-step *Connick-Pickering* test. *Schad v. Jones*, 415 F.3d 671, 674 (7th Cir. 2005) (citing *Connick v. Myers,* 461 U.S. 138 (1983)); *Pickering v. Bd. of Ed. Of Township High Sch. Dist., 205*, 391 U.S. 563 (1968). Under *Connick*, the Court first determines whether the employee spoke "as a citizen upon matters of public concern." *Connick,* 461 U.S. at 147; *Garzarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933, 940 (7th Cir. 2004). Second, under *Pickering*, the Court balances "the interests of [the employee], as a citizen, in commenting upon matters of public concern, and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568.

The question now becomes whether Doyle's speech addressed a matter of public concern. When determining whether speech addresses a matter of public concern, the Court considers "the content, form, and context of a given statement, as revealed by the whole record." *Cygan*, 388 F.3d at 1099 (citing *Connick,* 461 U.S. at 147–48). Of those three factors, content is the most important. *Id.* The Court may also consider the employee's choice of forum and motivation for speaking. *Id.; Cliff v. Board of School Comm'rs of City of Indianapolis, Ind.,* 42 F.3d 403, 410 (7th Cir. 1994) ("A number of our cases thus direct attention to 'the point of the speech in question; was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?") Ultimately, the Court must determine whether the speech is most accurately characterized as an employee grievance, or as a matter of political, social, or other concern to the

community, such as "something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *Id.*

Here, both of the Defendants persuasively argue that Doyle's statements to the Labor Board and to an attorney he wished to retain were for the purpose of resolving his own employment issues and not to inform the public. They also both argue that Doyle is unable to assert any public concern over the confidential information he released, which is the speech for which he was discharged. *See* Chief Judge MSJ, at 6 ("It is important that plaintiff was discharged not for making allegations that juveniles were being abused, but for divulging confidential information about juveniles, in violation of the procedure manual for the detention center and in violation of state law."); Peoria County MSJ, at 15 ("The full name of Aerial Y., for instance, could not possibly be considered a matter of public concern.").

Doyle's response on the issue of public concern is insufficient and misses the mark for many reasons. First, Doyle erroneously argues that summary judgment should be denied because there are factual disputes regarding the alleged incident of abuse at the Detention Center, and the issue of public concern is a question of fact. However, as will be further explained below, any disputes of fact with respect to the alleged incident of abuse are irrelevant, and whether the speech in question "rises to the level of public concern is a question of law." *Miller v. Jones*, 444 F.3d 929, 935 (7th Cir. 2006).

Second, Doyle argues that "it is a matter of public concern if an Illinois resident is terminated for properly providing information requested on an intake form from the Illinois Labor Relations Board." Resp. to Peoria County MSJ, at 7. It appears that Doyle is well off the map with respect to the scope of the "public concern" inquiry under First Amendment analysis. The Court's inquiry does not involve what the public's interest might be in the implications of

11

the (alleged) facts of this lawsuit. Instead, the inquiry is into the *content* of Doyle's speech for which he was terminated. The Court is concerned with whether Doyle's disclosures to the reporter, attorney, and Illinois Labor Relations Board regarding the incident of abuse addressed a matter of public concern, and even more specifically, whether those portions of Doyle's speech that violated the Detention Center rules and for which he was terminated – the last names, races, gender, and delinquency charges of 43 detainees – addressed a matter of public concern. Doyle has not even competently alleged that these statements were made for anything other than a private, personal interest – challenging an employment decision. Doyle has also failed to demonstrate a public concern or "newsworthiness" in the unredacted confidential information he disclosed. This is the speech for which he was fired. Furthermore, Doyle has not made any showing that the given reasons for his termination were pretextual. Likewise, he has not made any showing that he was not permitted to otherwise speak about the alleged incident of abuse, so long as he did not divulge confidential information. He admits that he did so with law enforcement personnel, and was never disciplined. See Chief Judge MSJ, at 6.

Third, Doyle's briefing only addressed the disclosures he made to the ILRB and to the attorney, but ignored the undisputed fact that he also turned over confidential information to a news reporter, in violation of state law and Detention Center Policy. This alone would apparently provide sufficient grounds for his termination.

For all of these reasons, the Court finds that, under the circumstances of this case, Doyle has failed to establish that his disclosure of the juvenile detainee's confidential information was constitutionally protected speech. Therefore, the Defendants are entitled to Summary Judgment on Doyle's First Amendment claims, Counts I and III.

## II. Due Process

In Count IV and V of his Amended Complaint, Doyle argues that due process rights were violated when he was terminated before being given adequate notice or opportunity to be heard, as his only opportunity to be heard was in front of the same person who disciplined and fired him. Here, the Chief Judge and Peoria County have moved for summary judgment on different grounds.

### A. Defendant Chief Judge

Early in the lawsuit, the Chief Judge moved to dismiss the § 1983 claims against him in his official capacity, as barred by the Eleventh Amendment. In light of the fact that the Eleventh Amendment bars a plaintiff from recovering money damages against the State, the Court dismissed Doyle's § 1983 claims for money damages against the Chief Judge in his official capacity. However, the Court also recognized that under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may sue state officials in their official capacities for prospective relief to enjoin ongoing violations of their federal rights, notwithstanding the state's Eleventh Amendment immunity. While the Complaint does not explicitly seek any form of prospective relief, Doyle's briefing on the Motion to Dismiss suggested that he might be seeking some sort of prospective relief. Accordingly, the Court concluded that the Chief Judge would remain a defendant, but only to the extent Doyle sought prospective relief.

At the Summary Judgment stage, the Chief Judge renews his arguments that the Eleventh Amendment bars all of the § 1983 claims, including the due process counts, because Doyle has not suffered a continuing constitutional violation nor has he sought any relief from the Chief Judge that could be considered prospective. The Chief Judge relies on *Sonnleitner v. York*, 304 F.3d 074. There, the Seventh Circuit found that when a plaintiff claims that he has been

13

dismissed or demoted in violation of his procedural due process rights, he has not alleged an ongoing constitutional violation. *Id*. at 718. Specifically, the court concluded that "the violation was not the demotion as such, but instead, the fact that the demotion occurred without an adequate opportunity to be heard." *Id*.

Doyle fails to provide any meaningful response to the Chief Judge's argument that Doyle's due process allegations do not establish an ongoing constitutional violation argument, stating only "[t]o the extent that this Court may award prospective relief such as injunctive or declaratory relief, 'requiring a state official to conform his or her behavior to the requirements of federal law in the future is not barred by the Eleventh Amendment.'" Resp. to Chief Judge MSJ, at 9 (quoting *Hadi v. Horn*, 830 F.3d 779, 783 (7th Cir. 1987).

Doyle's Complaint, aside from a general prayer for relief, seeks only actual damages, compensatory damages, and attorney fees. After the benefit of additional time and discovery, Doyle has not established an ongoing constitutional violation, nor has he refined his requested relief to include reinstatement or any other prospective relief which is not barred by the Eleventh Amendment. Accordingly, the Chief Judge is entitled to Summary Judgment on Doyle's due process claims.

### B. Defendant Peoria County

Defendant Peoria County argues that Doyle received all the process to which he was due. The Fourteenth Amendment Due Process Clause forbids a state from depriving any person of life, liberty, or property without due process of law. To establish a procedural due process violation, a plaintiff must demonstrate that there is (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process. *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004). Peoria County concedes that, as a member of a union whose

14

employment was subject to a collective bargaining agreement, Doyle had a cognizable property interest in continued employment. Peoria also concedes that Doyle was deprived of that property interest when he was discharged from the Detention Center, and therefore the only issue is whether Doyle received due process.

The Court begins its analysis by noting that due process is not a "technical conception with a fixed content," but rather is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The fundamental requirement of due process is an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

Generally, "some form" of pre-termination process is necessary for public employees who are terminated. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). The pre-termination hearing, however, need not be a full evidentiary hearing or formal in nature, *id*. at 545, and in fact, the scope and formality of the required pre-termination process "depends on the other pre- and post-termination procedures available to the employees." *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 503 (7th Cir. 1999); *see also Hudson*, at 374 F.3d at 560 ("[a]s long as substantial post-deprivation process is available, the pre-deprivation process required when terminating an employee often need not be elaborate or extensive"). A sufficient pre-termination process typically requires (1) notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to tell his side of the story. *Wainscott v. Henry*, 315 F.3d 844, 852 (7th Cir. 2003). But again, if there are elaborate post-termination procedures in place, a pre-termination hearing consisting only of notice of the charges and an informal opportunity to respond to them will pass constitutional muster. *See Schacht*, 175 F.3d at 503.

15

Here, it is undisputed that Doyle was issued a Notice of Adverse Action informing him of the violations with which he was charged and the evidence the Detention Center had concerning the violations. Doyle was also given the opportunity to respond in both written and oral format; he admitted the violations and was then terminated. Doyle does not argue that he did not receive notice or opportunity to be heard before his termination, but rather argues the pre-termination process he received was "illusory" because the same person who conducted the original investigation and concluded Doyle had "committed alleged workplace wrongs" – his supervisor, Mark Bronke – "was the same person that Plaintiff was suppose [sic] to sit down with and have his dispute resolved by." Resp. to Peoria County MSJ, at 13.

Even though Doyle cites no legal authority to support his "illusory due process" argument, nor does Peoria County respond to it in its Reply brief, it is true that Doyle is entitled to a pre-termination hearing before an impartial decisionmaker. *Head v. Chicago School Reform Board of Trustees*, 225 F.3d 794, 804 (7th Cir. 2000). However, those serving as adjudicators "are presumed to act in good faith, honestly, and with integrity." *Id*. (citing *Withrow v. Larkin*, 421 U.S. 35, 37 (1975).

> To overcome this presumption, a plaintiff must come forward with substantial evidence of actual or potential bias, such as evidence of a pecuniary interest in the proceeding, personal animosity toward the plaintiff, or actual prejudgment of the plaintiff's case. Evidence of prior familiarity with the plaintiff or his or her situation, or even of involvement in the particular matter under consideration, is not adequate by itself to overcome the presumption.

*Id*.; *see also Panozzo v. Rhoads*, 905 F.2d 135, 140 (7th Cir. 1990) (rev'd on other grounds) ("the plaintiff must overcome the presumption that the decision-maker is '[a person] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'") (quoting *Withrow*, 421 U.S. at 55).

Under these standards, it is clear that Doyle has not met his burden of overcoming the presumption that Bronke administered the pre-termination process "fairly on the basis of its own circumstances." *Id*. Doyle has not alleged that Bronke held personal animosity toward him or was otherwise biased against him, let alone produced "substantial evidence" to that effect. Moreover, contrary to Doyle's allegation, the fact that same person both investigated him and conducted his pre-termination hearing does not result in "per se impartiality," automatically rendering that hearing constitutionally infirm. *Panozzo*, 905 F.2d at 140 (no denial of due process in allowing the same person who brought the charges to preside over hearing); *Staple v. City of Milwaukee*, 142 F.3d 383, 387 (7th Cir. 1998) (plaintiff "must have some something more than the fact" that employer's official was involved in both the investigation and adjudication of the dispute); *see also Duchesne v. Williams*, 849 F.2d 1004, 1008 (6th Cir. 1998) (explicitly rejecting argument that due process is violated if the pre-termination hearing is conducted by the individual(s) responsible for initiating the disciplinary action); *Brasslett v. Cota*, 761 F.2d 827, 836-37 (1st Cir. 1985) (same).

The Court further notes that Doyle, pursuant to his union's collective bargaining agreement, had the benefit of substantial post-deprivation process in the form of multi-step review of Bronke's decision. The first step is an oral complaint from the employee to the employee's immediate supervisor. The second step is to present the written grievance to the Employer's second step representative within five working days of an answer to the first step grievance. A meeting of the Union and Employer representatives is then scheduled with a decision to follow. Within ten days after the decision is issued on the second step, the Union representative can submit the written grievance to the County Administrator and the Chief Judge.

After the Chief Judge, or his representative, issues his decision, the Union has the right to proceed to either arbitration or mediation over the grievance.

After Doyle's employment was terminated, the union filed a grievance, which reached the third step of the procedure outlined above. After a hearing, the Chief Judge's representative issued his decision to uphold Bronke's decision, but Doyle and/or the union declined to pursue arbitration or mediation when the step three grievance was denied. Importantly, "[A] state cannot be held to have violated due process requirements when it made procedural protection available and the plaintiff has simply refused to avail himself of them." *Hudson*, 374 F.3d at 563.

In total, the undisputed facts establish that Doyle received all the due process to which he is entitled under the Fourteenth Amendment.[1] Accordingly, defendant Peoria County is also entitled to Summary Judgment on Doyle's due process claims, Counts IV and V.

**III. State Law Retaliatory Discharge**

Doyle's only remaining count is a state common law claim of retaliatory discharge. Pursuant to Illinois law, a valid claim for retaliatory discharge requires the employee to establish (1) that he was discharged in retaliation for his activities, and (2) that the discharge violated "a clear mandate of public policy." *Callahan v. Edgewater Care & Rehabilitation Center, Inc.*, -- N.E.2d ---, 2007 WL 1932736, at *2 (Ill App. 1st Dist., July 3, 2007). Doyle invokes the public

---

[1] Doyle also briefly makes the argument that "Defendant is now contending Phillip Doyle was terminated for violating state law, however he was never given an opportunity to be heard on that issue and therefore he could not have had due process and Defendant's MSJ must fail on that issue alone." Resp. of Peoria County MSJ, at 13. Doyle correctly points out that the notice of adverse action he received from his employer stated that he was terminated for violating Detention Center Policy 3.1, and in their summary judgment briefing, both defendants state, at times, that Doyle was terminated for releasing juvenile's confidential information, which violated both the procedure manual for the Detention Center and state law. The fact of the matter is that Detention Center policy 3.1 and various Illinois statutes referenced by the defendants proscribe the *same conduct*: the unauthorized disclosure of confidential information regarding juvenile offenders. *See, e.g.*, 705 ILCS 405/5-901(5). Doyle has not refuted the defendants' representation that the Chief Judge enacted Detention Center policy 3.1 pursuant to those Illinois statutes, nor has he alleged that he could not have been terminated for the reason alone that he was provided in the disciplinary process – violation of Detention Center policy. Doyle's argument regarding this seeming difference is without merit.

18

policy in favor of full disclosure to the Illinois Labor Relations Board, as purportedly required by the Board's directives, and Peoria County invokes the public policy in favor of preserving the confidential information of juvenile detainees, as required by the Juvenile Court Act and Probation Officers Act. As a point of clarification, the Court has previously ruled that the retaliatory discharge claim against the Chief Judge has been dismissed as barred by sovereign immunity. *See* Report and Recommendation, d/e #31, at 10 ("The Illinois Court of Claims has exclusive jurisdiction over claims against the State for 'damages sounding in tort.'") (quoting 705 ILCS 505/8(d)).

The Court declines to exercise supplemental jurisdiction over Doyle's state law retaliatory discharge claim. Title 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction" over pendent state-law claims if the court has dismissed all claims over which it has jurisdiction. *Wright v. Associated Ins. Co. Inc*., 29 F.3d 1244, 1250 (7th Cir. 1994) (citing 28 U.S.C. § 1367(c)(3)). A district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims. *Id.* at 1251 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Timm v. Mead Corp*., 32 F.3d 273, 277 (7th Cir. 1994)).

Here, the Court has dismissed Doyle's claims over which the Court had original jurisdiction, and as the Seventh Circuit has repeatedly stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *East-Miller v. Lake County Highway Dep't*, 421 F.3d 558, 564-65 (7th Cir. 2005) (quoting *Groce v. Eli Lilly & Co*., 193 F.3d 496, 501 (7th Cir. 1999); *Wright*, 29 F.3d at 1250 (same). The Court's above rulings on the federal § 1983 claims have not already ruled upon any issues essential to the retaliatory

19

discharge count, and the Court's resolution of the parties' arguments on this state law claim would likely demand the analysis of competing public policies under Illinois law and regulations, an issue on which the Illinois courts have yet to provide any guidance. *See* 28 U.S.C. § 1367(c)(1) (permitting courts to decline jurisdiction where state law claim raises novel or complex issue of state law). Last, section 1367(d) tolls the statute of limitations for 30 days after this Court's dismissal of Doyle's supplemental claim, allowing him to re-file his retaliatory discharge claim against Peoria County in state court without it being time-barred. *See Williams Elec. Games, Inc. v. Garrity,* 479 F.3d 904, 907 (7th Cir.2007). Accordingly, Doyle's claim for retaliatory discharge is dismissed without prejudice.

## CONCLUSION

For the above reasons, the Motion for Summary Judgment by Defendant Chief Judge of the Tenth Judicial Circuit [#46] and the Motion for Summary Judgment by Defendant Peoria County [#45] are GRANTED. The matter is now TERMINATED.

ENTERED this 16th day of August, 2007.

    s/ Michael M. Mihm
Michael M. Mihm
United States District Judge